# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STUART WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-01220-CV-W-SWH |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## ORDER

### I. BACKGROUND

Pending before the Court is the Motion of the United States to Dismiss or, in the Alternative, for Summary Judgment on the Remaining Common Law Tort Claims (doc. #115). Plaintiff's First Amended Complaint contained the following counts against a number of defendants: Count I, a claim under 42 U.S.C. §1983 for Violations of the Constitution of the United States, the Constitution of the State of Missouri, and Federal and State Laws; Count II, a claim under 42 U.S.C. §1985 (Conspiracy) for Violations of the Constitution of the United States, the Constitution of the State of Missouri and Federal and State Laws; Count III a claim under the Federal Tort Claims Act; and Count IV, a claim pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Doc. #1, at 16-26)

On May 9, 2012, this Court granted defendants' motions to dismiss Counts I and II of the complaint. (Docs. #67, 68) On September 6, 2012, this Court granted in part and denied in part the Motion of the Individual Capacity Defendants to Dismiss Count IV of Plaintiff's First Amended Complaint or, in the Alternative, for Summary Judgment, and dismissed claims against

two individual defendants but left intact claims against defendants Sean Franklin and Christopher Wallace (Wright I)[1]. (Doc. #76) Franklin and Wallace brought an interlocutory appeal and on appeal, the Eighth Circuit remanded the matter for this Court to properly address defendants' qualified immunity defense and make findings of fact and conclusions of law sufficient to permit appellate review (Wright II). (Doc. #82-1, at 4-5)

On remand, this Court granted in part and denied in part defendants' motion for summary judgment (Wright III). (Doc. #104, at 20) The Court granted the portion of the motion seeking summary judgment as to plaintiff's claim against Franklin and Wallace for false arrest, finding that both marshals were entitled to qualified immunity. (Doc. #104, at 8-11) The Court denied the portion of the motion seeking summary judgment as to plaintiff's claims against Franklin and Wallace for excessive force and improper search and seizure, finding that neither marshal was entitled to qualified immunity. (Doc. #104, at 11-19)

Franklin and Wallace appealed the Court's decision with regard to their claim for qualified immunity on plaintiff's claims of excessive force and improper search and seizure. (Doc. #108-1) On appeal the Eighth Circuit found that the marshals were entitled to qualified immunity on plaintiff's excessive force claim and improper search and seizure claim and

---

[1] Adhering to the parties designation, this Court will refer to the following orders herein as follows:

> Wright I   This Court's original ruling on qualified immunity (doc. #76)
> Wright II  The Eighth Circuit's opinion remanding the case for additional consideration (doc. #82-1)
> Wright III This Court's opinion granting in part and denying in part the request for qualified immunity filed by Franklin and Wallace (doc. #104)
> Wright IV  The Eighth Circuit's opinion reversing the Court's denial of qualified immunity to Franklin and Wallace (doc. #108-1)
> Wright V   This Court's opinion granting qualified immunity to Franklin and Wallace (doc. #111)

2

remanded the matter for this Court to enter judgment consistent with the Eighth Circuit's determination (Wright IV). (Doc. #108-1, at 10-15) On March 15, 2016, this Court entered the order granting the remaining marshals' motion for summary judgment with respect to Count IV of Plaintiff's First Amended Complaint. (Doc. #111) Plaintiff's only remaining claim is a claim under the Federal Tort Claims Act (Count III) against the United States, which is the subject of the pending motion.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. "Material facts" are those "that might affect the outcome of the suit under the governing law," and a "genuine" material fact involves evidence "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

The initial burden of proof in a motion for summary judgment is placed upon the moving party to establish the absence of any genuine issue of material fact. See Olson v. Pennzoil Co., 943 F.2d 881, 883 (8th Cir. 1991). If the moving party meets its initial burden, the nonmoving party must then produce specific evidence to demonstrate genuine issues for trial. Id. When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but must set forth, via citation to material in the record, specific facts showing that a genuine issue of material

3

fact exists. See Fed.R.Civ.P. 56(c)(1); Stone Motor Co. v. General Motors Corp., 293 F.3d 456, 465 (8th Cir. 2002). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." Mira Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). The Court may not weigh the evidence in the record, decide credibility questions or determine the truth of factual issues, but merely decides if there is evidence creating a genuine issue for trial. See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).

III. UNDISPUTED FACTS

In a separate filing before this Court, defendant filed a Statement of Uncontroverted Material Facts and Settled Legal Conclusions. (Doc. #116) Plaintiff has raised a number of general objections to the form and content of the filing, including objections as to whether Wright IV controls some of the factual findings. (Doc. #120) Nevertheless, plaintiff has not provided any argument or evidence which disputes any of the facts listed below. Additionally, the majority of defendant's undisputed facts appear to be taken almost directly from the Eighth Circuit's decision in Wright IV. Therefore, this Court will not address any of the general objections as stated by plaintiff. (Doc. #120, at 1-7) The Court finds the following facts:

1. In 2008, Vinol Wilson ("Wilson") was indicted by a Grand Jury in United States District Court for the District of Kansas for "conspiracy to manufacture, to possess with intent to distribute and to distribute cocaine base 'crack,' and to possess with intent to distribute and to distribute cocaine" in the case styled United States v. Vinol Wilson, 07-20168-07-JWL/DJW (D. Kan.).

2. Following the issuance of the indictment, an arrest warrant was issued for Wilson; however, Wilson was not immediately located or apprehended.

3. Sean Franklin ("Franklin"), a Deputy U.S. Marshal with the U.S. Marshals Service in the District of Kansas began an investigation to locate and arrest Wilson.

4. Based upon his investigation, Franklin learned that Wilson had a history of drug, weapons, and aggravated assault offenses. Wilson had previously spent 78 months in prison for distributing crack cocaine and for using a firearm during a drug trafficking crime. Wilson was considered armed and dangerous.

5. Based upon his investigation, Franklin also learned that Wilson was a black male, born in 1974, was into steroids, body building and dog fighting, and was known to play basketball with a group of acquaintances in leagues and tournaments in and around the Greater Kansas City area.

6. For example, Franklin learned that Wilson played on a basketball team that participated in the 2008 Sunflower State games.

7. After obtaining a copy of that particular team roster, Franklin undertook to talk with other team members in an effort to locate Wilson pursuant to the outstanding arrest warrant.

8. Eventually, on Wednesday, April 15, 2009, at approximately 9:30 a.m., Franklin made contact with Walt Bethea ("Bethea"), who had played on Wilson's basketball team.

9. Franklin showed Bethea a 2005 Kansas driver's license photo of Wilson that Bethea identified as "V" and Bethea stated that he knew Wilson was wanted by law enforcement for some drug charges.

10. Bethea also informed Franklin that Wilson played in an adult basketball league in Grandview, Missouri, on Wednesday evenings at the Grandview Community Center. Bethea said that Wilson had played in the prior week's game and was scheduled to play again that evening at 7:30 p.m.

11. Bethea stated that Wilson's team was comprised of all black males who wore orange-colored jerseys.

12. At approximately 11:30 a.m., on April 15, 2009, Franklin met with a confidential source ("CS") at the Grandview Community Center.

13. Franklin showed CS the 2005 Kansas driver's license photo of Wilson and CS stated that he had seen the person pictured, but did not know his name. CS stated that he had seen Wilson wearing an orange-colored jersey with the number "23" on the back. CS also said that Wilson had been seen with his hair in braids (or "corn-rows"), sporting a goatee, and with gold-colored teeth.

14. CS obtained access to the roster for the team that he identified as the one Wilson played for. CS explained that individuals playing in the league do not have to produce any identification and rosters are not checked by the Grandview Community Center for any accuracy. The roster included many of the names that had been on the team roster for the 2008 Sunflower State games, including Walt Bethea. Wilson's name was not listed, but there was an entry for "Vyshon Watson." Franklin knew that Wilson had a minor son named Vyshon.

15. CS told Franklin that he would assist in identifying Wilson if he showed up for the basketball game scheduled for that evening.

16. At 5:55 p.m., Franklin received a telephone call from a friend of Bethea's advising him that the basketball game involving Wilson's team had been moved up to 6:30 p.m. Franklin then placed a call to CS to verify the information, but CS did not answer.

17. At around this same time, Franklin set up a briefing area near the parking lot for Grandview High School to organize the arrest team and the operation to arrest Wilson.

18. At approximately 6:15 p.m., CS called Franklin and confirmed that the game involving Wilson's team had been moved up an hour and was due to start at 6:30 p.m. CS advised Franklin that Wilson had been seen inside the gym.

19. A few minutes later, CS called Franklin again and informed Franklin that Wilson was on the gym basketball floor, shooting baskets before the start of his game, was wearing an orange-colored jersey with the number "23," and had his hair braided.

20. At 6:45 p.m., Franklin arrived at the Grandview Community Center along with five other Deputy U.S. Marshals ("DUSMs"), including Wallace.

21. Franklin made the decision to arrest Wilson during the course of the basketball game because he felt that this offered the greatest protection for the safety of the public and law enforcement. The Grandview Community Center parking lot was crowded with

cars and people (including young people) and Franklin believed it might pose an undue public danger to try to apprehend Wilson as he was leaving the Community Center. Franklin also wanted to avoid any high speed vehicle chase. In addition, Franklin felt that by arresting Wilson on the basketball court while a game was in progress, he was somewhat less likely to have a weapon on him.

22. Franklin, Wallace, and the three other DUSMs proceeded to the basketball gym where Franklin showed his badge to the individual running the clock/scoreboard. Franklin told the individual to sound the buzzer and stop the game.

23. Franklin was wearing his U.S. Marshals Service badge on a chain around his neck.

24. After the buzzer sounded, Franklin and Wallace went out on to the basketball court toward a black male with braided hair, wearing an orange-colored jersey with the number "23" on it.

25. Franklin was not in uniform but was wearing a Kansas City Royals jersey.

26. Stuart Wright, a black male wearing an orange-colored number "23" jersey, was playing a full-court game of basketball when very suddenly, Wright saw a man wearing a Kansas City Royals shirt directly in front of him with a gun pointed at him. The man (Franklin) was not wearing a uniform of any type that Wright was able to recognize. Wright did not see anything identifying the man as a law enforcement officer. The man was yelling things as he came toward Wright, but Wright could not understand what he was saying. At some point, Wright heard the name Vinol mentioned. Wright told the man his name and said that he had identification there in the gym.

27. As Franklin approached Wright he ordered Wright to get on the ground. Wright, however, continued to back away from Franklin, at which point Franklin grabbed Wright's shirt and kicked at his legs. The pulling of Wright and the kicking of Wright's legs brought Wright directly in between Franklin and Wallace. Wallace deployed his taser hitting Wright in the back and Wright fell to the floor.

28. Franklin leaned over Wright to say in his ear something to the effect of, "What's your name?" Wright told Franklin he name was Stuart Wright, a name that Franklin recognized from the team roster for the 2008 Sunflower State games. Franklin said, "Don't lie to me." Wright told Franklin again that his name was Stuart Wright. Franklin then said something to the effect of, "Let's get him out of here." Wright was

then pulled to his feet and handcuffed. Many of the people present were telling the men that Stuart Wright was not Vinol Wilson.

29. As Wright was being taken out of the Community Center, he saw a Grandview Police Officer named Officer Clausing. Wright recognized him as a Grandview High School graduate. Wright said something to the effect of, "My name is Stuart Wright. I graduated from Grandview High School in 1996. You know me." Officer Clausing then said something to the general effect of, "That's not the guy. I know him." Nevertheless, Wright was taken out of the Community Center in handcuffs and put in the back of a police patrol car that was outside the Community Center.

30. Stuart Wright's brother, Stephen Wright, got Stuart's driver's license from his gym bag and gave the license to Franklin very shortly after Stuart had been taken out of the gym. Franklin told Stephen Wright that he knew his brother was not Vinol, but Franklin said that Stuart had information about Vinol. Franklin and one other man told Stephen to speak to his brother and tell him to tell them what they wanted to hear.

31. Stephen Wright was allowed to speak to Stuart briefly in the car. Stephen told Stuart to give the officers any information he had about Vinol. The officers continued to keep Stuart in custody.

32. The officers asked Stuart Wright questions about whether he played basketball with a man named Vinol Wilson, where Vinol Wilson was, and how Wright could help them find Vinol Wilson. Wright told the men he did not know where Vinol Wilson was or how to find him.

33. Wright heard some of the men talking about taking a vacation day the next day, about how everything had happened so fast, about hearing the "pop-pop" sounds, and about how they had gotten the wrong guy.

34. After fifteen minutes to twenty minutes, the officers pulled Stuart Wright out of the car. They told him that they were going to pull the probes out of him. One of the men asked if he needed an ambulance. Stephen Wright told them that he was going to take Stuart to the hospital (which he did). One of the officers also told Stuart that they were going to un-cuff him. He then said, "Now, you're not going to go all ape-shit on me, are you?" Stuart told him, "No."

35. Franklin told Stuart Wright that he had checked him in the computer and that he had two traffic warrants that he needed to handle.

36. Wright was then released after being in custody for approximately fifteen to twenty minutes.

## IV. CONCLUSIONS OF LAW

The Federal Tort Claims Act (hereafter FTCA) waives the government's sovereign immunity with regard to certain tort claims made against the United States. 28 U.S.C.A. §2674. Specifically, "with regard to acts or omissions of investigative or law enforcement officers of the United States," the FTCA waives the governments sovereign immunity with regard to claims arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C.A. §2680(h). Such claims are governed by the "law of the place where the act or omission occurred." 28 U.S.C.A. §1346(b). Because the matters described in the First Amended Complaint occurred in Missouri, Missouri substantive law applies to the matter.

In his First Amended Complaint, plaintiff identifies the following torts as actionable under the FTCA: false arrest, false imprisonment, abuse of process, assault and battery.[2] (Doc. #38, at ¶44(c)) This Court will address each tort separately, with the exception of false arrest and false imprisonment. As discussed more fully below, claims for false arrest and false imprisonment in Missouri are treated similarly. Therefore, this Court will address both simultaneously.

---

[2] Paragraph 44(c) of plaintiff's First Amended Complaint also mentions negligence. (Doc. #38, at ¶44(c)) Defendant notes that plaintiff has included the term negligence but that the terminology appears to be used in relation to the four tort claims specifically identified and is not to serve as an individual claim of negligence. (Doc. #115, at 6 fn. 7) In his responsive brief, plaintiff states "at issue herein are four FTCA claims which have not yet been considered by either this Court or the 8th Circuit: false arrest, false imprisonment, abuse of process, and assault and battery." (Doc. #119, at 7) Therefore, this Court will treat plaintiff's First Amended Complaint as alleging claims for false arrest, false imprisonment, abuse of process, and assault and battery.

The parties have given great attention as to whether the law of the case dictates this Court's findings in the instant action. Generally the "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L. Ed. 2d 194 (1984). Earlier decisions of the court will thus be followed in the same case unless there is "clear error or manifest injustice." Alexander v. Jensen-Carter, 711 F.3d 905, 909 (8th Cir. 2013). The law of the case is a rule of practice and not a limitation of power. Kempe v. United States, 160 F.2d 406, 408 (8th Cir. 1947). The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided[.]" Messenger v. Anderson, 225 U.S. 436, 444, 32 S. Ct. 739, 740, 56 L. Ed. 1152 (1912).

This Court finds the doctrine inapplicable in this matter. The doctrine focuses on a court's ruling as a matter of law. While the Bivens claims and the FTCA claims are complimentary they are not the same issues. Thus, the Eighth Circuit's findings on qualified immunity do not as a matter of law automatically dictate the legal conclusions under the FTCA. However, the rationale behind the grant of qualified immunity for certain Bivens claims may be highly relevant to the issue of whether defendant is entitled to summary judgment on the FTCA claims, especially in view of the fact that the Court should be considering the same factual scenario in deciding the various legal issues. Therefore, rather than simply relying on the law of the case, the Court will consider whether defendant is entitled to summary judgment on each claim brought under the FTCA.

A. False Arrest and False Imprisonment

The Supreme Court of Missouri has explained that the "essence of the cause of action of false arrest, or false imprisonment, 'is the confinement, without legal justification, by the wrongdoer of the person wronged.'" Rustici v. Weidemeyer, 673 S.W.2d 762, 767 (Mo. 1984) (quoting Warrem v. Parrish, 436 S.W.2d 670, 672 (Mo. 1969)). Justification is a complete defense to both false arrest and false imprisonment. Blue v. Harrah's N. Kansas City, LLC, 170 S.W.3d 466, 473 (Mo. Ct. App. 2005); Rankin v. Venator Grp. Retail, Inc., 93 S.W.3d 814, 822 (Mo. Ct. App. 2002). Therefore, if Franklin and Wallace were justified in arresting plaintiff, then no cause of action may accrue for false arrest or false imprisonment.

In Wright III, this Court found that defendants Franklin and Wallace were entitled to qualified immunity because they had a reasonable belief that the person they arrested (Wright) was the person they had probable cause to arrest pursuant to a warrant (Wilson). (Doc. #104, at 11) In so finding this Court relied on Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), and cases extrapolating the holding in Hill to civil suits for mistaken identity. (Doc. #104, at 10) In Hill, the Supreme Court found no Fourth Amendment violation where the arresting officers arrested an individual they reasonably and in good faith believed to be the individual sought and that such mistaken belief did not invalidate the arrest. Hill v. California, 401 U.S. 797, 802-04, 91 S. Ct. 1106, 1110, 28 L. Ed. 2d 484 (1971). Therefore, the question in civil cases involving mistaken identity is whether a reasonable officer could have believed that the plaintiff was the person named in the warrant. (Doc. #104, at 10) In Wright III, this Court found that Franklin and Wallace took steps to locate and identify Wilson and given the situation, the marshals could have a reasonable belief that plaintiff was Wilson. (Doc. #104, at 11)

The reasoning behind this Court's decision in Wright III, applies equally to the matter now before us. Vinol Wilson, the man the marshals' sought, was under indictment for drug charges and a warrant for his arrest had issued. As discussed in Undisputed Facts numbers 4-19, supra, the marshals investigated Vinol Wilson and his whereabouts and took measures to ensure that the person apprehended was Vinol Wilson. Therefore, at the time of the arrest, the marshals were justified in arresting the individual they believed to be Vinol Wilson.

The question now turns to whether the continued detention of Vinol Wilson after the marshals confirmed his identity constitutes false imprisonment. Again justification is a complete defense for false arrest/imprisonment. Blue, 170 S.W.3d at 480. While the decision in Wright IV does not automatically dictate the finding in this instant case, its reasoning with regard to the continued detention is relevant. In Wright IV, the Eighth Circuit found that:

> Wright was held for up to twenty minutes after the Marshals realized that he was not Vinol Wilson. Under the totality of circumstance, we conclude the delay in releasing Wright was reasonable. The Marshals removed Wright from the commotion of the gymnasium and verified his identity. Detaining Wright in the police vehicle allowed the Marshals to defuse the situation and reorient themselves. The twenty minute delay was a minimal intrusion on Wright's liberty interest and may have ensured that no further mistakes were made that day.

(Doc. #108-1, at 14-15) The Eighth Circuit, as well as this Court, previously found that the initial arrest of plaintiff was justified. The Eighth Circuit further determined that the marshals' continued detention of plaintiff was reasonable under the circumstances. This reasoning applies equally to the common law claim of false arrest and imprisonment. Therefore, defendant's motion for summary judgment with regard to the false arrest and false imprisonment claims is granted.

B. Abuse of Process

In order to prevail on a claim of abuse of power, a claimant must show that "(1) the defendant made an illegal, improper, perverted use of process, which was neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted, or improper use of process; and (3) the plaintiff sustained damages as a result." Diehl v. Fred Weber, Inc., 309 S.W.3d 309, 320 (Mo. Ct. App. 2010). The Supreme Court of Missouri has explained that "use of process" "refers to some wilful [sic], definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process." Stafford v. Muster, 582 S.W.2d 670, 678 (Mo. 1979). Abuse of process is a willful act and the defendant must have "some ulterior purpose[.]" Cmty. Title Co. of St. Louis v. Lieberman Mgmt. Co., 817 S.W.2d 255, 258 (Mo. Ct. App. 1991). Where "the use of process was within the right of the defendant[,]" an abuse of process claim will fail. Missouri Highway & Transp. Comm'n v. Commerce Bank of Kansas City, N.A., 763 S.W.2d 172, 177 (Mo. Ct. App. 1988). At least one Missouri court has found no abuse of process where an officer's actions are "supported by a facially valid warrant and probable cause." Pitts v. City of Cuba, 913 F. Supp. 2d 688, 715 (E.D. Mo. 2012).

Plaintiff argues that there is a genuine dispute as to whether the continued restraint of Wright and questioning Wright as to Vinol Williams was authorized by the arrest warrant. (Doc. #119, at 19) Plaintiff has not shown any evidence of an ulterior purpose as required. Instead, his argument goes to whether or not the marshals falsely imprisoned plaintiff. As discussed above, the Eighth Circuit has concluded that Wright's continued detention under the circumstances was justified. Therefore, defendant's motion for summary judgment is granted with regard to the abuse of process claim.

C. Assault and battery

In Missouri there is no claim that encapsulates both assault and battery; instead they are two separate claims. Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 335 (Mo. 2011). A plaintiff alleging battery must prove that there was "intended, offensive bodily contact with another person." Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 246 (Mo.App. 2006). Whereas assault is "'any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril.'" Phelps v. Bross, 73 S.W.3d 651, 655 (Mo.App. 2002). The analysis is different, however, where an assault and battery charge stems from an arrest by a law enforcement officer. In such situations, "a plaintiff asserting that he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it." Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987). The plaintiff has the duty to show that the arresting officer "used more force thereabout than was reasonably necessary to effect the arrest." State ex rel. Ostmann v. Hines, 128 S.W. 248, 250 (1910).

Defendant argues that the marshals did not use any more force than was reasonably necessary given the circumstances. (Doc. #115, at 16) Defendant points out that when the marshals approached Wright, they believed Wright to be the individual they sought who was potentially an armed and dangerous fugitive. (Doc. #115, at 16) Additionally, defendant argues that Wright's actions as the marshals came toward him could have led them to believe that Wright was resisting arrest. (Doc. #115, at 16) Defendant also argues that "[n]o claim for assault and battery exists in this case for the same reason that [the Eighth Circuit in Wright IV found that] qualified immunity barred any Constitutional claim for excessive force for 'a single Taser

shock causing no lasting injury to a man reasonably identified as the suspect and purported to be armed and dangerous.'" (Doc. #115, at 19)

In Wright IV, the Eighth Circuit did not address the question of whether the force used was excessive. Instead, the question the Eighth Circuit addressed was a narrow question under the qualified immunity analysis of whether a reasonable officer would have been on notice that the officer's conduct violated a clearly established right. (Doc. #108-1 at 8) In Wright III, this Court, citing Shekleton v. Eichenberger, 677 F.3d 361 (8th Cir. 2012), found that a "reasonable officer on the scene would not have believed it necessary to use a taser where the man the officers believed to be Vinol Wilson merely backed away from a man holding a gun on him." (Doc. #104, at 13) This Court reached the conclusion in Wright III based upon its repeated viewings of the video tape, which was offered into evidence by the parties, and which caused this Court to reach the following factual finding:

> 26. Wright never threatened Franklin by any words he said or anything he did. Wright did not push Franklin's arm away and did not take a stance and cock his arm like he was about to throw a punch at Franklin. Wright did not attempt to run away from Franklin. Wright merely backed away from a man in a Royals shirt who had a gun aimed at him.

(Doc. # 104, at 4) (footnote omitted) These facts were key to this Court's original ruling that defendants Franklin and Wallace were not entitled to qualified immunity on the excessive force claim. However, these facts were not adopted by the Eight Circuit opinion nor were they part of defendant's proposed uncontroverted facts. Thus, this Court has not relied upon any findings it reached from its review of the video tape in ruling on the pending summary judgment motion.[3]

---

[3] While plaintiff's claims under the FTCA raise different legal issues from the claims brought against the individual defendants, the facts upon which the Court's legal conclusions are based must be consistent. Had fact number 26 from this Court's decision in Wright III, been adopted by the Eighth Circuit, the Court believes that defendants Franklin and Marshall would not have been entitled to summary judgment on the qualified immunity issue for the reasons

15

The holding of the Eighth Circuit in Wright IV on the issue of plaintiff's constitutional claim of excessive and unreasonable force is clearly relevant to the assault and battery claim. As noted in Schoettle v. Jefferson Cty., Mo., 2014 WL 1117587 (E.D. Mo. Mar. 20, 2014), the reasoning used in granting qualified immunity on an excessive force claim applies equally to granting summary judgment in favor of the government on an assault and battery claim. Schoettle v. Jefferson Cty., Mo., No. 4:12-CV-2075-SPM, 2014 WL 1117587, at *11 (E.D. Mo. Mar. 20, 2014), aff'd sub nom. Schoettle v. Jefferson Cty., 788 F.3d 855 (8th Cir. 2015).

Holtgreven v. O'Fallon Police Dep't, 2009 WL 2032164 (E.D. Mo. July 8, 2009), presents a similar situation. There one of the defending officers received a radio call regarding an erratic driver. Holtgreven v. O'Fallon Police Dep't, 2009 WL 2032164, at *3 (E.D. Mo. July 8, 2009). The officer attempted to pull the car over but the car continued on its way, swerving into oncoming traffic and onto the shoulder. Id. When the vehicle finally came to a stop the driver failed to respond to the officer's attempts to show his hands and exit the vehicle. Id. at *4. After several failed attempts to get the driver to exit the vehicle, the officer grabbed the driver and pulled the driver out of the car and onto the ground. Id. at *5. While on the ground, the officer attempted to handcuff the driver, but the driver was combative and failed to comply with the officer's orders. Id. Two other officers observed the officer and the driver struggling and attempted to use the tip of their taser gun to deliver an electrical charge in an attempt to subdue the driver. Id. When that failed to subdue the driver, the officers then deployed their tasers. Id. The driver sued alleging that at the time of the incident he was suffering from diabetic shock. Id. at *3. In ruling on the assault and battery claim against the officers, the court found that the

---

discussed in this Court's prior opinion. Therefore, based upon the 8th Circuit's decision in Wright IV, this Court has not relied upon that factual finding in deciding the pending summary judgment motion.

16

driver failed to demonstrate that the officers "used more force than was reasonably necessary." Id. at *11. In ruling on the assault and battery claim, the court in Holtgreven cited and relied upon its earlier discussion denying plaintiff's constitutional claim of excessive force. The same facts upon which the court relied upon to find that the officers use of force was objectively reasonable on the constitutional claims compelled a finding that the plaintiff "posed a threat to public safety and to the individual officers[, and that his] refusal to exit his vehicle and his subsequent act of resisting arrest necessitated the use of force by the officers." Id. Therefore, the court found that the officers did not use any more force than was reasonably necessary given the facts of the case and that the officers were entitled to summary judgment on the assault and battery claims for the same reasons they were entitled to summary judgment on the constitutional claim. Id.

The Eighth Circuit in Wright IV also drew a distinct contrast between the facts of this case and the facts in Shekleton v. Eichenberger, 677 F.3d 361 (8th Cir. 2012), upon which this Court had relied in denying qualified immunity to two of the defendants. In Shekleton the plaintiff "was an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to run from [the officer], and did not behave aggressively towards [the officer]." Shekleton, 677 F.3d at 366. In contrast, the Eighth Circuit in Wright IV noted that officers in the instant matter were attempting to apprehend an individual (Wilson) who had a "history of drug, weapons, and aggravated assault offenses[.]" The court stressed that the evaluation as to the reasonableness of the officer's use of force must be made "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" (Doc. #108-1, at 11) The court thus found that a "reasonable officer would not have had fair

warning that using a single Tazer shock against a suspected felon would have violated clearly established Constitutional rights." (Doc. #108-1, at 11)

Other Eighth Circuit cases also stress that the court must decide the issue based upon facts known to the officers at the time. See Washington v. Drug Enf't Admin., 183 F.3d 868, 874 (8th Cir. 1999); Cook v. City of Bella Villa, 2008 WL 1360838, at *6 (E.D. Mo. Apr. 8, 2008), aff'd, 582 F.3d 840 (8th Cir. 2009).

In this case, the undisputed facts as set forth by defendant, and which were previously adopted by the Eighth Circuit, do not reflect that the marshals used more force than was reasonably necessary to effect the arrest. The marshals were attempting to locate an individual who had a history of involvement with drug, weapons and aggravated assault offenses. (See Undisputed Fact #4, supra) The marshals investigated the matter and took steps to confirm that the individual sought would be at the Grandview Community Center at a certain time and would be dressed in a uniform with the number "23". (See Undisputed Fact ##4-19, supra) The officers also planned the arrest in order to minimize danger to the public or themselves. (See Undisputed Fact #21, supra) When Wright did not immediately comply with the marshals' demand and was positioned in between the two marshals, albeit unintentionally, the officers use of force was reasonable in light of the marshals' understanding of the individual sought. This Court finds that summary judgment in favor of the United States should be granted.

Based on the foregoing, it is

**ORDERED** that the defendant's Motion of the United States to Dismiss or, in the Alternative, for Summary Judgment on the Remaining Common Law Tort Claims[4] (doc. #115) is **GRANTED**.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

---

[4] As an alternative to the request for summary judgment, defendant sought the dismissal of the tort claims under the Supremacy Clause. Given the Court's ruling granting summary judgment on all remaining issues, the Court need not address the alternative motion to dismiss.